By the Couht.
The petition alleges that the relator is. a citizen and elector, of the county of Fayette, and of the second judicial circuit of the state of Ohio; and that the defendants William C. Tanzey, Isaac Glaze, Allen Hegler and Horace M. Blessing constitute the board of deputy state supervisors of elections for the county of Fayette, and J. A. Me Killipp is the clerk of the board. It is further alleged that the defendants have failed and refuse to make and complete the third abstract provided for, and required, by section 2890, of the Revised Statutes, of the' votes cast at the general election held in Fayette county, on the 8th day of November, 1892, and have also failed and refuse to make and complete the abstract required by section 2994, of the Revised Statutes, showing the number of votes given in the several election precincts of the county for each person who received votes for the office of judge of the circuit court, and transmit the same to the board of deputy supervisors of elections of the county in the second judicial circuit having the largest population, the county of Fayette being in that circuit; and the prayer of the petition is for a writ of mandamus to compel the defendants to perform their duties in that behalf. An alternative writ having been issued, two of the defendants, Hegler and Blessing, answer, that they are ready and willing, and have at all times been, to make and certify the abstracts in the manner sought by the petition, but the other two members of the board of deputy supervisors have prevented their completion and transmission; while they, in turn, answer that they have been, and still are, ready and willing to perform their duties in the matter complained of, not, however, in the manner asked by the petition; and they allege they have *658 not been able to complete the abstracts, because Hegler and Blessing insisted they should be made up as in the petition prayed for.
The controversy between the members of the board, relates to their duties with respect to abstracting the votes of certain election precincts for judge of the circuit court of the second circuit; and that, aside from a question raised as to the right of the relator to institute the action, is the matter of controversy here.
The defendants Tanzey and Glaze, contend, that in making up the abstracts referred to, Frank Chance, who was the regularly nominated candidate of the Democratic party for the office of circuit judge, should, in addition to the votes cast for him on the Democratic ticket, be credited with eleven votes which, it is claimed, he received on the People’s party ticket in the western precinct of Union township, and with certain other votes which, it is claimed, he received in some other election precincts of the county. They first claim that the talley-sheets of these precincts, properly interpreted, show on their face, that Chance received the number of votes claimed, on the ticket mentioned. The tally-sheets of the precincts in question are not substantially different. Taking that of the western precinct of Union township as an example, there is a division of the tally-sheet set apart for the “ People’s party ticket,” in the left-hand column of which is the name of the office to be filled, and in the column next on the right, the name of the candidate for the office. Among the offices, to be filled, as appears in the left-hand column, is “Judge of Circuit Court, 2d Circuit,” opposite which, in the next column to the right, is the name “ Frank Chance.” To the right of each name on the ticket, is the word “received”; then still to the right of that, opposite each name, except that of Chance, appears the following,

*659 while, in the corresponding columns opposite Chance’s name, nothing appears — they are blank; then below the name of Chance, follow the names of the can didates, for county offices, with the words and characters—

in the columns opposite each name. There is printed at the head of the ticket, on the tally-sheet, above the names of the candidates, the words “ Straight Ballots.” The columns to the right of this are blank. But immediately below the words “Straight Ballots,” on another line, are the words “Scratched Ballots,” and in the columns opposite these words, are the words and characters—

The claim of the respondents Tanzey and Glaze, is, that inasmuch as Chance’s name was on the People’s party ticket, and the other candidates on that ticket received the number of votes set opposite their names respectively, it is apparent the omission to credit him with a like number of votes is a mere clerical mistake. It is said, that the purpose was to set down the twelve votes opposite the words “ Straight Ballot,” instead of opposite the words “Scratched Ballot”; and there having been twelve straight tickets voted, each candidate must necessarily have received the same number pf votes, and, it is therefore immaterial, it is urged, that the number of votes are not set down on the tally-sheets in the columns opposite or under the name of Chance. This claim of the respondents assumes that two mistakes were made by the election officers of the precinct; one, in counting and tallying all the straight ballots as scratched ballots, and the other, in not tallying in the ap *660 propriate columns any of them for Chance. The presumption is that the precinct officers properly discharged their official duties, and that the tally-sheet as returned by them to the board of deputy supervisors, was in all respects correct. That' board had no right to indulge any different presumption, or interpret the tally-sheet contrary to what it plainly expressed. The law defining the duties of the precinct officers is clear and specific. Section 24, of the act of April 18, 1892, (89 Ohio Raws, 448), provides that when the count begins, the ballots shall be taken out of the ballot box “ one at a time, by one of the judges, who shall read aloud distinctly, while the ticket remains in his hands, the name or names voted for thereon, except that a straight ticket may be announced as such, and be so counted, and then delivered to the second judge who shall examine the same and pass it to the third judge, and so on to the fourth, who shall preserve it; and the same method shall be observed in respect to each of the tickets taken out of the ballot box, until the number taken out of the ballot box is equal to the number of names in the poll-book. The clerks shall enter in separate columns, by tallies under or opposite the names of the persons voted for, as provided in the form of tally-sheets, all votes thus read by the judges.” The duty enjoined upon the clerks by this section is, to set down in separate columns on the tally-sheet, by tallies, under or opposite the name of each candidate, the votes received by him as read by the judges, whether they be read as straight ballots, or otherwise. There appears to be no provision of law for entering the words “ Straight Ballots,” or “ Scratched Ballots,” on the tally-sheet, and none authorizing the votes to be tallied opposite or under those words, and counting votes thus tallied, for any candidate. But if there were, on the tally-sheet of the precinct in question, no votes were tallied to the People’s party ticket under or opposite the words “Straight Ballot,” but all are tallied opposite the words “ Scratched Ballots ”; so that, it does not appear from the tally-sheet, in any way, that Chance received any votes on that ticket.
*661 Another claim made by Tanzey and Glaze is, that information having come to them from some of the precinct officers and other sources, that Chance’s name was in fact on the alblots cast and counted for the Peoples’ party ticket, an ad sealed envelope containing certain ballots which oraAt deposited and left uncounted because there were doubt and difference of opinion in the minds of the judges of election, concerning their legality, having been returned with the tally-sheet and poll-book of the precinct, it was competent for the board of deputy-supervisors, in making up the abstracts required by law, to inquire into the truth of the information, and if necessary, to open the envelope and ascertain whether any mistake was made in the tally-sheet; and thejr further claim such investigation would have shown that Chance’s name was on each of the Peoples’' party ballots voted in the precincts in controversy. It is clear the board had no such power. Their authority extends no farther than to “make abstracts of the votes” returned by the precinct officers, in the manner provided by sections 2980,2989 and 2994 of the Revised Statutes, and certify and transmit them to the proper officer, as required by law. Tc make the abstracts, is simply to summarize and compile the votes shown by the tally-sheets returned from all the election precincts of the county, and set down to each candidate the aggregate vote shown by those tally-sheets to have been received by him. The duties of the board of deputy supervisors in this respect, are purely ministerial, and in their performance of them they cannot look beyond the returns made to them. The provision contained in section 24, of the act of April 18, 1892, that if there are left uncounted any ballots concerning the legality of which there is doubt or difference of opinion in the minds of the judges of election, they shall not be destroyed, but sealed up and returned with returns of the election “for such judicial or other investigation as may be necessary,” was intended, we think, to preserve the ballots, so they may be used as evidence in the event of a contest, or other investigation before a tribunal or body having jurisdiction to inquire into the regularity and validity of the election, or determine who was elected, and confers no au- *662 tbority upon tbe board of deputy supervisors, in making up the abstracts, to enter upon such an investigation. We find no ground, therefore, upon which to sustain the claim made by the respondents Tanzey and Glaze, that eleven votes, or any number of votes tallied under the head of the People’s-party ticket in the western precinct of Union township, should be added to the votes received by Chance on the democratic ticket, or in any way carried into the abstract in his-behalf, since it does not appear from the tally-sheet of the precinct referred to, that he received any votes on the former ticket. And the same is - true as to the alleged votes which, those respondents claim should be entered in the abstracts,, to the credit of Chance, from the eastern precinct of Union township, and from the Green, Wayne and Jasper township-precincts, they being the other precincts in dispute.
The question is made, by demurrer to the reply, whether the relator is entitled to institute the action, he having no other interest than that of an elector of the county and judicial circuit. Section 6744. of the Revised Statutes, provides that the writ of mandamus “may issue on the information of the party beneficially interested.” It was held in State v. Brown, 38 Ohio St. 344, that an elector has such. beneficial interest in an election as entitles him to institute “a proceeding in mandamus to compel the sheriff to give notice and make proclamation to the qualified voters of a county to elect a judge of the court of common pleas therein.” Such a proceeding-would be futile if he could not also, in like manner, compel the performance of any other statutory duty, necessary to the consummation of the election, and declaration of its result.. The beneficial interest of the elector in the election does not cease, we think, when the machinery for holding it is'set in motion, nor, until all lawful steps are taken to its completion. It was claimed in argument at -the hearing, that the relator, by the interest he manifested in the election, had disqualified himself from maintaining the action. We have examined the evidence-taken on that subject, and are of opinion the claim is not. well founded.

Peremptory writ awarded.